IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BURTON HANDELSMAN, an individual          CIVIL ACTION NO. 9:19-cv-80847-RKA

            Plaintiff,

v.

SMS CO., a New York general partnership,
MARSHA STOCKER, an individual,
SANDY HEASLIP, an individual, and
STEVEN HANDELSMAN, an individual.

            Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

The defendants, SMS Co. ("SMS"), Marsha Stocker ("Marsha"), Sandy Heaslip ("Sandy"), and Steven Handelsman ("Steven") (collectively, the "defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 19, 12(b)(1), 12(b)(2), and 12(b)(6), hereby file their motion to dismiss the complaint of Burton Handelsman ("Burton").

## INTRODUCTION

Burton brings claims against his family members for breach of fiduciary duty, conspiracy, and fraudulent transfer, all of which have been disposed of in his divorce from Lucille Handelsman ("Lovey") as described herein.  In that case all the parties here were joined, and Burton was adjudicated to have committed fraud on the divorce court and had his pleadings stricken.  This lawsuit is the latest in a line of a dozen harassment suits Burton has brought against his adult children—Steven, Marsha, and Sandy—whom he refers to as his enemies.

There are many reasons this case is frivolous.  Each one provides independently dispositive grounds for dismissal.  They are as follows:

- The core of Burton's claim is that his family should have made distributions to him as a co-owner of a business called Landmark. But Burton transferred his ownership interest in Landmark to Lovey in the divorce. The Eleventh Circuit has dealt with this precise issue and held that where a former spouse during a divorce "surrendered her ownership interest" in a family business, she no longer has standing to sue for these types of claims. *Martinez v. Mkt. Traders Inst., Inc.*, 757 F. App'x 815, 816 (11th Cir. 2018).

- Burton asserts subject-matter jurisdiction under the federal diversity statute, but he does not name two indispensable parties—one of which is Landmark, the company from which he claims he is owed a distribution—and each of which destroys diversity.

- Burton does not state a claim upon which relief might be granted, because his breach of fiduciary duty allegations fail to identify that anyone owed him a duty; his conspiracy claim fails to allege a cognizable underlying wrong; and his fraudulent conveyance claim does not allege any facts from which he could establish that he is a "creditor" entitled to collect on a debt.

- Burton's claim for personal jurisdiction over the defendants rests on "general" jurisdiction, which means the defendants must be domiciled in Florida. But his complaint acknowledges that each of the defendants is domiciled in New York.

For these independently sufficient reasons, and others set forth below, the Court should dismiss Burton's claims with prejudice.

## STATEMENT OF FACTS

The allegations of the complaint are set forth below.

### I.     The Parties and Their Citizenship for Diversity Purposes

1.     Burton, the plaintiff, is a citizen of Florida. Compl. ¶ 2. He seeks to invoke this Court's power only through diversity jurisdiction. *Id*. ¶ 8.

2.     Burton is the father of Steven, Marsha, and Sandy, who are the "Individual Defendants." *Id*. ¶ 6. The Individual Defendants are all citizens of New York. *Id*. ¶ 5.

3.     Steven, Marsha, and Sandy own SMS, which is a New York general partnership and a citizen of New York. *Id*. ¶ 3.

4.      Landmark Properties ("Landmark"), is a New York general partnership. *Id.* ¶ 20. Burton alleges that he, his former wife Lovey, and SMS were "partners" of Landmark "[a]t all material times." *Id.* ¶ 19.

5.      There are no allegations in the complaint regarding Landmark's citizenship, nor was Landmark made a party to the case.

6.      There are also no allegations regarding the citizenship of Burton's former wife, Lovey, nor was she made a party to the case.

## II.      The Divorce Case

7.      Burton's complaint contains numerous references to a divorce case that is pending in Palm Beach County.  Specifically, in allegations 28 and 40–47, Burton recites his view of the history of certain discovery disputes between the parties, Landmark, and Lovey relating to the transactions at issue in his complaint.

8.      For the purpose of arguments II(A) and III(C) below, the Individual Defendants request that this Court take judicial notice of the partial judgment in the divorce case dated April 2, 2019, attached hereto as Exhibit "A."[1]  This Court need not delve into all the details of the divorce case, but a little background is warranted, given the allegations in Burton's complaint.  The background follows below.

9.      Lovey filed for divorce in March, 2016.  *See* Exh. "A" (partial judgment) at 84. All of the family entities that make up the Handelsman real estate "empire" were added as parties to the case, as were the Individual Defendants, who were referred to as the adult "Children" of

---

[1] Judicial notice of the referenced records and orders may be taken by this Court in deciding this motion to dismiss (without converting the motion into a summary judgment motion). *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) (listing authorities and holding that the court may look beyond the four corners of a complaint when and where judicial notice is appropriate); *Chapman v. Abbott Labs.,* 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013).

the marriage. *Id*. at 5.

10.     In 2018, the divorce case was tried over the course of 17 days with approximately one thousand exhibits entered in evidence, including detailed forensic accounting reports. *Id*. at 1. During the trial, there was lengthy witness testimony regarding how the entities (including Landmark) were managed by Burton or by the Individual Defendants while the divorce case was pending and how that should be accounted for during a stipulated, post-judgment "accounting," which is set for trial in December, 2019. *See*, *e.g.*, *id.* at 3–4, 11–17, 47, 90–92.

11.     The judge in the divorce case announced his oral ruling in January, 2019, and then entered a "judgment" on April 2, 2019, which judgment has been deemed a partial, non-final judgment pending the completion of the post-judgment "accounting." The issues that will be addressed during the accounting process, which include Landmark-related issues, are described on pages 76–77 and 90–92 of the partial judgment (that is, Exhibit "A").

12.     The divorce judge made detailed factual findings to support his conclusion that Burton is a "chronic fabricator," *id.* at 38, who engaged in a "pervasive pattern of dishonesty and shenanigans" with respect to the Handelsman empire, *id.* at 60, in order to harm his wife and children (the Individual Defendants)—people he considers to be "his enemies," *id.* at 17. The "shenanigans" included, as just a couple of examples, manufacturing "sham documents" that Burton used to seek control of key family entities and to cover up his removal of millions of dollars to effectuate a fraud on the court. *Id.* at 16. Burton has also filed a "substantial number" of lawsuits, such as this one.[2] *Id.* at 17; s*ee also id*. at 11–17.

---

[2] The divorce court noted that Burton demonstrated himself to be "extremely litigious," in that he filed a "substantial number of lawsuits" against the Individual Defendants, Exh. "A" (partial judgment) at 17, which actions have generally been either dismissed or subjected to stays in light of the pending divorce action.

13.     To protect Burton's wife and the Individual Defendants (as well as the court system) from any further "shenanigans" of this nature, the divorce court designed an equitable distribution scheme that, to the greatest extent possible, removed Burton from the businesses where the Individual Defendants had ownership interests.  *See*, *e.g.*, *id.* at 16–20, 46–47, 51, 53–54, 64.

14.     While the "shenanigans" that occurred in the divorce case provide context to the present action, there are only three facts from the partial judgment that need to be "noticed" to resolve this motion (each of which is, in isolation, a sufficient basis to dismiss the case).

15.     First, Burton has no continuing ownership interest in Landmark whatsoever. Rather, Burton's entire partnership interest, which was comprised of 20% ownership of the company, was transferred by stipulation to Lovey on April 2, 2019.  *Id.* at 27 ("For certain assets the Former Husband and Former Wife agreed on the values and distribution to be provided from one to the other."), *id.* at 32 ("Landmark properties … F[ormer] H[usband] shall transfer his 20% to the F[ormer] W[ife] and she will hereafter own 40%."); s*ee also id.* at 10.

16.     As part of the divorce judgment, Burton was ordered to execute an assignment of all of his right, title, and interest in Landmark to Lovey.  *See id.* at 9.  As set forth in Burton's July 26, 2019, notice of compliance with court orders, he executed and delivered the required assignments, including the assignment of Landmark, which were effective as of April 2, 2019. *See* Exhibits "B" (notice of compliance); "C" (assignment).[3]

---

[3] The defendants request that the Court also take judicial notice of Exhibits "B" and "C."  *See*, *e.g.*, *Mills v. Select Portfolio Servicing, Inc.*, 18-CV-61012, 2018 WL 5113001, at *3 n.1 (S.D. Fla. Oct. 19, 2018) (taking judicial notice of assignment); *MSPA Claims 1, LLC v. United Auto. Ins. Co.*, 204 F. Supp. 3d 1342, 1344 n.2 (S.D. Fla. 2016) (taking judicial notice of assignment agreement from state court proceedings).

17.     Second, when Burton was removed from the partnership, he received a cash credit in the equitable distribution scheme for both his and Lovey's 20% interests in the company (collectively, they owned 40%).  *See* Exh. "A" (partial judgment) at 27, 32.  The credit was calculated using a stipulated value for the entity—inclusive of the value of the "Property" that was sold in or around December, 2017.  In divorce terminology, Lovey "paid" Burton $3,586,655 for all of his right, title, and interest in Landmark.  *See id.* at 32 and at Exh. 1, 2C-1. Whatever rights as a "partner" Burton possessed, they now belong to Lovey, whom Burton did not join as a party to this lawsuit.

18.     Third, to the extent that Burton feels that he was somehow shortchanged by his stipulated value, the divorce court has retained jurisdiction to do a post-judgment accounting where Burton can present whatever arguments he deems appropriate in light of the prior rulings of the divorce court (subject to all defenses and objections to same).  *See id.* 76–77, 90–92.

### III.     The Nature of Burton's Claims in This Case

19.     The crux of Burton's allegations in the complaint is that Landmark sold real property for $2,879,320.25 in December of 2017, Compl. ¶¶ 25–26; Landmark did not make a distribution to its partners, *id*. ¶ 31; Landmark instead made two loans to SMS in the total amount of $2,840,000, which loans require repayment over a term of two years and for which Landmark received a promissory note, *id*. ¶¶ 33, 34, 39; SMS (**not** Landmark) at some point in time after taking out the loans made a $500,000 transfer from SMS (not Landmark) to Lovey, *id*. ¶ 49; and Burton wants a distribution from Landmark of what he claims is his portion of the proceeds of Landmark's sale of real property, *see id*. 50–51—even though it is not alleged that **any** partner of Landmark received a distribution.

20.     Burton wrestles from these allegations claims of breach of fiduciary duty against SMS and Marsha because Landmark made the loans to SMS, *id*. ¶ 63; civil conspiracy to breach fiduciary duties against all defendants *id*. ¶ 70; and fraudulent conveyance claims against SMS for receiving the proceeds of the loans (with promissory notes) from Landmark, *id*. ¶¶ 76, 85.

21.     There are no allegations that Burton retained any rights with respect to Landmark following April 2, 2019 (which he did not).   There are no allegations that the loan from Landmark to SMS was not reasonable under the circumstances, that the loans are not performing, that the loans are not "market" or arm's length, or that the loans were somehow prohibited by the partnership agreement or other applicable law.   Conspicuously, Burton has not attached any documents to the complaint—not a partnership agreement, not a statutory provision, nothing— that would establish what rights he purportedly had as a minority owner of Landmark, to a distribution of funds or otherwise.

## ARGUMENT

### I.     STANDARD

The defendants move to dismiss under Rule 12(b)(1), (2), and (6), the standard for each subpart of which is set forth below.

For a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "based solely on the allegations in the complaint," the Court "must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009); *see also Butler v. Morgan*, 562 F. App'x 832, 835 (11th Cir. 2014).   When, however, facts outside the complaint are considered, as they may be here, this Court is "free to **weigh** the facts and [i]s **not** constrained to view them in the light most favorable" to Burton.  *Carmichael*, 572 F.3d at 1279 (emphases added).

A complaint will be dismissed for lack of personal jurisdiction under Rule 12(b)(2), unless the plaintiff pleads "sufficient jurisdictional facts to make a prima facie case" of jurisdiction over non-resident defendants. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). A "prima facie case" can only be established if the plaintiff alleges jurisdictional facts that, if taken as true, would "withstand a motion for directed verdict" on the question of personal jurisdiction. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F. 3d 1286, 1291 (11th Cir. 2000).

Under Rule 12(b)(6), in order for a plaintiff "[t]o survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). To satisfy this standard, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, No. 19-80240-CIV, 2019 WL 3285533, at *1 (S.D. Fla. July 22, 2019) (Altman, J.) (quoting *Iqbal*, 556 U.S. at 679). Additionally, "[t]o meet this plausibility standard, a plaintiff must plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Funding Metrics, LLC v. Decision One Debt Relief LLC*, No. 18-81061-CIV, 2019 WL 3759111, at *1 (S.D. Fla. Aug. 9, 2019) (Altman, J.) (internal quotations omitted).

## II.   BURTON DID NOT AND CANNOT ESTABLISH SUBJECT MATTER JURISDICTION

As set forth below, Burton does not allege facts sufficient to bring his claims within the subject-matter jurisdiction of the federal courts of the United States—and no such facts exist.

## A. THE COMPLAINT SHOULD BE DISMISSED BECAUSE BURTON LACKS STANDING TO SUE

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 & n.42 (11th Cir. 1991). To establish standing, a plaintiff must satisfy three requirements: (1) injury-in-fact; (2) a causal connection between the injury and the challenged conduct; and (3) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

As the plaintiff, Burton bears the burden of establishing that, on the date his lawsuit was commenced, he had standing to seek relief. *See MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 16-20212-CIV, 2016 WL 4154266, at *2 (S.D. Fla. July 28, 2016); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250, 1258 (S.D. Fla. 2016).  As set forth below, he has not met this burden—and he **cannot** as a matter of law and fact establish a plausible basis for alleging standing, so he should not be afforded leave to amend.  *See Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. 1981) ("[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation[.]"); *Gordon v. United States*, 8:11-CV-2852-T-30TGW, 2012 WL 1988711, at *2 (M.D. Fla. June 4, 2012) (granting motion to dismiss, and denying leave to amend, where plaintiffs lacked standing to bring claims).

As a matter of law, Burton cannot show that his alleged injury would be redressed by a decision favorable to him.  His claims to "standing" are all based on his purported right to receive a distribution or other funds from Landmark as a minority partner.  But Burton is no longer a partner of Landmark by virtue of the partial judgment of divorce (and the related

assignment that Burton signed), as described above.  The issue, therefore, is whether Burton has any continuing "standing" to bring suit in light of the current state of affairs.  He does not.

The law is clear:  Once Burton lost his partnership interest in the divorce, he lost his "standing" to sue to enforce his former rights as a partner.  The Eleventh Circuit has addressed claims similar to Burton's—where a former spouse who lost her interests in a company in her divorce action sued to enforce her rights as a former owner.  The Eleventh Circuit affirmed the district court's ruling that she did not have standing, as follows:

> [The former wife] filed this . . . federal court [action] . . . asserting . . . that one of the family businesses . . . engaged with others in a conspiracy to commit [fraud], which in turn harmed her 50% ownership stake in [the business].  The various family-member[s] . . . responded [that the former wife] surrendered her ownership interest in [the business] as part of an earlier phase of the divorce proceeding, and that she therefore lacked [standing] . . . .  The district court [correctly] agreed and dismissed [the former wife's] suit.

*Martinez v. Mkt. Traders Inst., Inc.*, 757 F. App'x 815, 816 (11th Cir. 2018); *cf. Siegmund v. Xuelian*, No. 12-62539-CIV, 2016 WL 1444582, at *6 (S.D. Fla. Apr. 11, 2016) (dismissing a derivative action for lack of standing because plaintiff no longer owned company stock at the time of the lawsuit); *In re Biscayne Bay Lofts, LLC*, Bankruptcy No. 10-13020-BKC-AJC, 2010 WL 3282598, at *3 (Bankr. S.D. Fla. Aug. 19, 2010) (explaining that shareholders who lose their shares—involuntarily or willingly—lose standing to bring a derivative action under Florida law).

The bases for dismissal in this case are even stronger than they were in *Martinez*.  In *Martinez*, the former wife fought to keep her interest in the company as part of the divorce proceedings (which meant that the district court was forced to consider issues related to collateral estoppel and res judicata).  Here, Burton **stipulated** to the transfer of his partnership interest in Landmark to Lovey and signed the related "assignment," so there can be no question as to the

finality of Burton's transfer of his partnership interest to Lovey.  Exh. "A" (partial judgment) at

7, 27–34 (reflecting that Burton stipulated to the transfer of Landmark to Lovey); Exh. "B"; Exh.

"C."  Because he stipulated to the transfer, it is binding upon him and cannot be challenged on

appeal under Florida law.  *Landmark Am. Ins. Co. v. Pin-Pon Corp.*, 267 So. 3d 411, 412–13

(Fla. 4th DCA 2019) (reciting that stipulations are "binding not only upon the parties but also

upon the trial and appellate courts" (quoting *Troup v. Bird*, 53 So. 2d 717, 721 (Fla. 1951))).

In short, Burton's complaint should be dismissed because he is not an owner of

Landmark and, therefore, he lacks standing to assert claims as a "partner" of the company.

### B.  THE COMPLAINT MUST BE DISMISSED BECAUSE LANDMARK AND LOVEY ARE INDISPENSABLE PARTIES AND DESTROY DIVERSITY

Burton's causes of actions purport to assert claims regarding his rights as a partner of

Landmark.  As explained *infra* in Section III(A), Landmark, the partnership, and Lovey, one of

the partners, are both indispensable parties to this action.  Therefore, their citizenship must be

considered in the Court's assessment of its diversity jurisdiction.

Lovey is domiciled in Florida.  *See* Exh. "A" at 85–86.  For purposes of federal diversity

jurisdiction, Landmark's citizenship depends on the citizenship of each of its partners; therefore,

it is a citizen of **both** Florida (where Lovey and Burton reside) and New York (where all of

SMS's partners reside).  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990); *Orchid Quay,*

*LLC v. Suncor Bristol Bay, LLC*, 178 F. Supp. 3d 1300, 1303–04 (S.D. Fla. 2016) ("[A]ll

unincorporated associations, regardless of their particular corporate-like features, are treated as

partnerships and deemed to possess the citizenship of their partners or members.").

When Landmark is joined, it does not matter whether it is as a plaintiff or a defendant—

either way, its joinder destroys diversity jurisdiction because it has the same citizenship as both

the plaintiff and the defendants.  With respect to Lovey (who would presumably be joined as a defendant given her adversity to Burton), her Florida citizenship similarly destroys diversity.

Because Landmark and Lovey must be joined (as set forth below), the case must be dismissed for lack of subject matter jurisdiction.  *See Liddy v. Urbanek*, 707 F.2d 1222, 1224 (11th Cir. 1983) (vacating and remanding with instructions to dismiss an action alleging the corporation's treasurer wasted and converted corporate assets because the case proceeded without the corporation, an indispensable party to the action, whose joinder destroyed federal diversity jurisdiction); *Duke & Benedict, Inc. v. Wolstein*, 826 F. Supp. 1413, 1415–16 (M.D. Fla. 1993) ("It is a clear legal principle in Florida that limited partnerships and corporations are indispensable parties to derivative actions. . . .  [W]here there is an indispensable party which destroys diversity the case must be dismissed for lack of subject matter jurisdiction.").

## III. EVEN IF BURTON COULD ESTABLISH SUBJECT MATTER JURISDICTION IN THIS COURT (HE CANNOT), THE ACTION SHOULD BE DISMISSED BECAUSE OF FATAL PLEADING DEFECTS

### A. IRRESPECTIVE OF HOW BURTON ALLEGES HIS CAUSES OF ACTION, LANDMARK AND LOVEY ARE INDISPENSABLE PARTIES

As described below, Burton's legal action is improperly brought as a direct action and must be brought as a derivative action on behalf of Landmark.  But it does not matter.  Either way—whether Burton's claims are direct or derivative—Burton's claims must be dismissed for failure to join indispensable parties.

Under Florida law, Landmark is required to be joined in a derivative action brought on its behalf.  *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 909-10 (11th Cir. 1998) ("In a partnership derivative suit, the partnership is an indispensable party. . . . [Plaintiff] was required to name [the partnership] in order to plead a proper derivative

action. . . ."); *Duke & Benedict*, 826 F. Supp. at 1415 (holding that limited partnerships and corporations are indispensable parties to derivative actions under Florida law).

Even if there was some way for Burton to allege his causes of action as "direct" actions against the defendants—and there is not—Landmark and Lovey would still need to be joined to afford complete relief. *See Wing Indus., Inc. v. Korach*, 31 Fed. R. Serv. 2d 582, at *2 (S.D. Fla. 1981) ("Generally members of a partnership are considered indispensable parties to an action involving partnership business."); *DM II, Ltd. v. Hosp. Corp. of Am.*, 130 F.R.D. 469, 475 (N.D. Ga. 1989) (finding that "absent partners are indispensable parties" to an action brought by some partners of a partnership against other partners to obtain profits that are based on those partners violating the partnership agreement and dismissing the case because joinder of the absent partners would divest the court of federal diversity jurisdiction).

In short, no matter how Burton pleads his claims, Landmark and Lovey are indispensable parties.  The joinder of either of them destroys complete diversity, which is the asserted basis of jurisdiction.  Application of Rule 19 and the diversity statute 28 U.S.C. § 1332 requires dismissal of "the entire case" where, as here, a "non-diverse party is indispensable."  *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340, 1343 (11th Cir. 2011).

## B. THE RELIEF SOUGHT IN THE COMPLAINT MUST BE SOUGHT THROUGH A DERIVATIVE ACTION—NOT A DIRECT ACTION

As previewed above, the complaint sets forth claims that **must** be brought as a derivative action on behalf of Landmark against the management—not as a direct action by Burton against the defendants. *See Lewis v. Seneff*, 654 F. Supp. 2d 1349, 1363 (M.D. Fla. 2009) (holding that when a limited partner is damaged "to the extent of their proportionate interest in the partnership," the harm to the partner is indirect and the partner cannot bring a direct action). Under Florida law, "[a] claim can be brought directly only if (1) there is a direct harm to the

shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company and (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members." *Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1326 (S.D. Fla. 2018) (internal quotations omitted).  Burton's complaint fails both elements.

First, there is no direct harm to Burton.  All harm alleged "flow[s] subsequently from an initial harm" to Landmark.  In his complaint, Burton seeks damages for not receiving his proportionate interest in the sale proceeds from Landmark, which money was purportedly improperly transferred out of Landmark to SMS through "sham transactions."  Compl. ¶ 38. This is an indirect injury that must be brought as a derivative action.  *See Lewis*, 654 F. Supp. 2d at 1366.  In other words, the heart of the complaint is based on improper transfers made from Landmark to SMS, which deprived Landmark and, consequently, Burton of Landmark's sale proceeds.  All alleged harm first goes to Landmark, then to Burton as a former partner thereof. *MCO Airport Concessions, LLC v. Greater Orlando Aviation Auth.*, No. 6:11-CV-742-ORL-22GJK, 2012 WL 12896558, at *4 (M.D. Fla. Feb. 14, 2012), *aff'd*, 508 F. App'x 920 (11th Cir. 2013) (finding that an action should have been brought as a derivative action, not direct action, because the "gravamen of the complaint" alleges injury to the company and its shareholders generally, not the plaintiffs individually).

Second, plaintiff alleges no "special injury" to himself as compared to the other Landmark partners.  It is not clear that Lovey received proceeds from the sale, nor is it even clear that SMS received proceeds from the sale.  Landmark transferred approximately $2.8 million to SMS in exchange for interest-bearing promissory notes of equal value.  SMS is required to pay back the money, *with interest*; it was not a distribution of the sale proceeds that SMS can keep.

Thus, none of the partners received distributions of the sale proceeds and there is no special injury to plaintiff.  Allegations like those included in the complaint—*i.e.*, of harm based on the improper diversion of assets or funds or based on the deprivation of a minority shareholder of profits—are insufficient to establish individualized harm required for a direct action.  *See, e.g.*, *Silver Crown*, 349 F. Supp. 3d at 1326–27 (holding that the improper diversion of funds and assets of a limited liability company which caused loss to a limited liability member must be brought as a derivative action); *Karten v. Woltin*, 23 So. 3d 839, 840 (Fla. 4th DCA 2009) (finding a minority shareholder's lawsuit against two shareholders alleging the two shareholders combined their ownership interests to control the corporation and deprive the minority shareholder of profits to be a derivative action because the injuries were not sufficiently individualized for a direct action).

Dismissal is required of "direct" actions brought for the types of claims asserted in the complaint, *i.e.*, breach of fiduciary duty, conspiracy, and fraudulent conveyance, because they must be brought as a derivative action.  *See, e.g.*, *Silver Crown*, 349 F. Supp. 3d at 1327, 1334 (dismissing a direct action filed by a member of a limited liability company against the company's managers and directors for breach of fiduciary duties based on the improper diversion of company funds and assets, finding that it must be brought as a derivative action); *Luna-Marquez v. Laviosa*, No. 14-62334-CIV, 2015 WL 11519187, at *4–5 (S.D. Fla. June 23, 2015) (dismissing various causes of action, including breaches of duty of care, loyalty/self-dealing, and loyalty/candor, fraud, waste, and misappropriation of company property, because such claims "sound[] in the nature of derivative claims"); *Kammona v. Onteco Corp.*, 962 F. Supp. 2d 1299, 1302 (S.D. Fla. 2013), *aff'd*, 587 F. App'x 575 (11th Cir. 2014) (dismissing a shareholder's direct action for breach of fiduciary duty against a corporation, corporate officers, and others

because the injury is to the corporation and shareholders generally and therefore "the claim belongs to the corporation" and must be brought as a derivative action).  Because Burton improperly alleged a direct action instead of a derivative action, the complaint must be dismissed.  *See In re Stilley*, No. 14-11440-EPK, 2015 WL 8781270, at *4 (Bankr. S.D. Fla. Apr. 21, 2015) (dismissing claims that should have been pursued as a derivative, not direct, action); *MCO Airport*, 2012 WL 12896558, at *4 (dismissing a 10-count complaint for lack of standing because the claims should have been brought as a derivative, not direct, action).

### C.  THIS COMPLAINT FAILS TO STATE A CAUSE OF ACTION FOR EACH COUNT THEREIN AND SHOULD BE DISMISSED

Dismissal for failure to state a claim is required for Burton's claims because there is "no construction of the factual allegations [that] will support the cause[s] of action."  *Agudelo v. Padron*, No. 18-22612-CIV, 2019 WL 1331900, at *2 (S.D. Fla. Mar. 25, 2019).

### i.  Count I:  Breach of Fiduciary Duty (against Marsha and SMS)

To properly plead a cause of action for breach of fiduciary duty, a plaintiff must allege: (i) the existence of a fiduciary duty; (ii) breach of that duty; and (iii) damages proximately caused by that breach.  *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010).

The plaintiff fails to plead all three elements.  First, there is no allegation of any duty owed to Burton.  Under Florida law, a fiduciary relationship is established where "confidence is reposed as a result of the position of superiority and influence held by the fiduciary."  *Argonaut Dev. Grp., Inc. v. SWH Funding Corp.*, 150 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001), *aff'd sub nom. Argonaut Dev. Grp. v. SWH Funding*, 45 F. App'x 884 (11th Cir. 2002).  No such allegations have been pleaded by Burton.  Instead, he makes only conclusory allegations that Marsha and SMS "owed a fiduciary duty to Burton."  Compl. ¶¶ 60, 62.  Burton does not, for instance, cite the partnership agreement that sets forth a basis for a fiduciary relationship; nor is

there a statutory provision cited with allegations that such laws apply to any of the defendants. Without allegations establishing a fiduciary relationship, a claim for a breach of fiduciary duty "fails as a matter of law and fact." *Argonaut*, 150 F. Supp. 2d at 1364.

Second, absent from the complaint is a plausible allegation of how any duty was breached. Burton claims that Landmark received funds from the sale of real property and, instead of distributing the funds to Burton, loaned the money. Compl. ¶¶ 32–35, 63. What makes that a breach in these circumstances is left to the imagination, which is not acceptable under the federal pleading requirements since *Twombly*.

Third, Burton's allegations do not state how he was harmed. Even if he were entitled to a distribution, he has not alleged that he did not receive full value for his interst in Landmark in the divorce court—a value to which he stipulated. *See* Exh. "A" (partial final judgment) at 26–27.

### ii.   Count II:  Civil Conspiracy

Civil conspiracy requires the following elements: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010). Plaintiff's allegations are insufficient to state a claim for civil conspiracy.

First, plaintiff alleges SMS and its three partners conspired against him. However, without additional allegations such as some personal stake in the conspiracy by the individuals— all of which is absent from Burton's complaint—"a civil conspiracy claim will not succeed where the only members of the alleged conspiracy are a corporation and/or its officers." *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1325 (M.D. Fla. 2016), *aff'd*, 703 F. App'x 814 (11th Cir. 2017).

Additionally, a conspiracy requires an underlying wrong.  The underlying wrong alleged by Burton is "breach of fiduciary duty."  Burton did not state a claim for breach of fiduciary duty, so by necessity he cannot plead a conspiracy to breach fiduciary duties.  *See, e.g.*, *Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1360–61 (S.D. Fla. 2002) ("Florida does not recognize an independent action for conspiracy.  Under Florida law, a civil conspiracy is derived from the underlying claim that forms the basis of the conspiracy." (internal citations omitted)).

### iii.     Counts III and IV:  Fraudulent Conveyance

To properly state a claim for fraudulent conveyance based on "actual intent to hinder, delay, or defraud," as Burton attempts here, a plaintiff must allege "(1) there was a creditor sought to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been available to satisfy the debt."  *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1369–70 (S.D. Fla. 2011) (internal citations omitted).  Burton must also plead his allegations with particularity.  *See, e.g.*, *Ben-Yishay v. Mastercraft Dev., LLC*, No. 08-14046-CIV, 2009 WL 6387928, at *4 (S.D. Fla. Dec. 14, 2009) (applying Rule 9(b)'s pleading requirements to a fraudulent conveyance claim).  Regardless of the standard, Burton's complaint fails, because he does not plead that he is a creditor.  He alleges that he did not receive a distribution, but there is no allegation he was entitled to a distribution.

## IV.     THIS COURT LACKS PERSONAL JURISDICTION OVER EACH NON-RESIDENT DEFENDANT

The Court also does not have personal jurisdiction over the defendants.  The plaintiff alleges personal jurisdiction over the defendants—all nonresidents—based on general jurisdiction.  Compl. ¶¶ 11-12 ("Defendants are engaged in substantial and not isolated activity within the State of Florida.").  "[A] very high threshold must be met in order for general jurisdiction to be exercised over a nonresident defendant in Florida," *Pathman v. Grey Flannel*

*Auctions, Inc.*, 741 F. Supp. 2d 1318, 1323 (S.D. Fla. 2010), which "must be assessed under a stricter standard," *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1386 (S.D. Fla. 2014). "Under this more exacting standard, a defendant's contacts with the forum state must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world. In other words, a defendant's activities must be so continuous and systematic as to render [defendant] essentially **at home** in the forum state." *Id.* at 1386 (quotations omitted).

None of the defendants is "home" in Florida. As to the Individual Defendants, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). As Burton admits, the Individual Defendants are domiciled in New York. Compl. ¶ 5. For SMS, the paradigm forum for the exercise of general jurisdiction is the place "in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. This standard is generally interpreted to mean a place of incorporation or principal place of business. *Id*. There is no allegation other than that SMS Co. is at home in New York (nor could there be). *See* Compl. ¶ 3.

As far as the required "continuous and systematic" contacts with Florida required to make the defendants "constructively present" in Florida, plaintiff alleges **only** the following: (i) they are parties to and involved in Burton's dissolution of marriage proceeding in Florida; (ii) the Individual Defendants own an interest in, manage, or control an unspecified number of unnamed closely-held entities that own real property somewhere in Florida; (iii) the Individual Defendants own unquantified interests in an unspecified number of unnamed closely-held Florida entities;

and (iv) the defendants receive an unquantified amount of income from undescribed business activities in Florida.  Compl. ¶¶ 13-17.

These allegations—even if true—are not enough to state a prima facie case that the defendants are "essentially at home" in Florida.  *Pals Grp., Inc. v. Lacaye Beverage Corp.*, No. 09-21857-CIV, 2010 WL 11504805, at *8 (S.D. Fla. Mar. 10, 2010) (finding the following contacts insufficient to exercise general jurisdiction over a non-resident defendant: (1) rental of property in Florida for many years; (2)  entering into rental agreements in Florida with Florida parties; (3) receipt of rental income from Florida parties; and (4) rent payments being deposited in a Florida bank); *Bryant v. Hasbro, Inc.*, No. 8:18-CV-1336-T-36CPT, 2019 WL 2211053, at *3 (M.D. Fla. May 22, 2019) ("[Florida] [c]ourts have . . . held that general jurisdiction is not conferred on a corporation incorporated and with their principal place of business outside the state, even where the corporation had distribution agreements with dealers based in Florida, implemented marketing efforts in Florida, and attended trade shows in Florida.").

## V.     CONCLUSION

Based on the foregoing, the defendants respectfully request that the Court dismiss Burton's complaint in its entirety, with prejudice.

Dated:  August 30th, 2019                              Respectfully submitted,

By:  /s/ Zachary R. Potter
Jeffrey D. Fisher
Florida Bar No. 326941
Zachary R. Potter
Florida Bar No. 064430
**FISHER POTTER HODAS, PL**
515 No. Flagler Drive, Suite 800
West Palm Beach, Florida 33401
Telephone:  (561) 832-1005
Facsimile:  (561) 820-9375
eservice@FPHlegal.com
*Attorneys for the defendants*

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for the defendants hereby certifies that counsel for the defendants has conferred with counsel for the plaintiff in a good faith effort to resolve the issues raised in this motion, and that counsel for the plaintiff has stated that the plaintiff opposes the relief requested herein.


Dated:  August 30th, 2019                               Respectfully submitted,

                                                        By:  /s/ Zachary R. Potter
                                                        Jeffrey D. Fisher
                                                        Florida Bar No. 326941
                                                        Zachary R. Potter
                                                        Florida Bar No. 064430
                                                        **FISHER POTTER HODAS, PL**
                                                        515 No. Flagler Drive, Suite 800
                                                        West Palm Beach, Florida 33401
                                                        Telephone:  (561) 832-1005
                                                        Facsimile:  (561) 820-9375
                                                        eservice@FPHlegal.com
                                                        *Attorneys for the defendants*


## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will serve a copy of the foregoing to all registered counsel of record.


                                            By:  /s/ Zachary R. Potter
                                                 Zachary R. Potter
                                                 Florida Bar No. 064430