IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-80847-CIV-ALTMAN/Brannon

BURTON HANDELSMAN,

    Plaintiff,
v.

SMS CO., et al.

    Defendants.
_____/

## **RESPONSE/MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**

Plaintiff, Burton Handelsman ("Plaintiff" or "Burton"), by and through undersigned counsel, hereby responds to Defendants' Motion to Dismiss Plaintiff's Complaint [DE 19] (the "Motion to Dismiss"), and states:

### I.    **INTRODUCTION**

This Court should deny the Motion to Dismiss. "A motion to dismiss is only granted when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *S. Spanish Trail, LLC v. Globenet Cabos Submarinos Am., Inc.*, No. 19-80240-CIV-ALTMAN/Brannon, 2019 WL 3285533, at *1 (S.D. Fla. July 22, 2019) (quoting *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998)). "When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept the complaint's factual allegations as true and must construe them in the light most favorable to the plaintiff." *Floyd v. Broward Cnty. Sheriff's Dep't*, No. 18-61988-CIV-ALTMAN/Hunt, 2019 WL 4059759, at *2 (S.D. Fla. Aug. 28, 2019) (citing *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016)). All reasonable inferences from the facts alleged in the complaint must also be accepted as true. *S. Spanish Trail*, 2019 WL 3285533, at *1 (citation omitted).

As discussed herein, because Landmark Properties ("Landmark") is a general partnership, partners have standing to pursue claims directly. Derivative actions are creatures of statute that exist in the context of corporations, limited liability companies, and limited partnerships, but not in the context of general partnerships. Moreover, a fiduciary duty was owed to Plaintiff as a partner of Landmark as a matter of law. As alleged in the Complaint, the misconduct engaged in by Defendants was aimed at harming Plaintiff while benefitting Defendants and the only other partner of Landmark, Lucille Handelsman ("Lucille"). Plaintiff, as the only person harmed by Defendants' actions, has standing to seek redress for Defendants' misconduct, which harmed Plaintiff and nobody else. Further, as only Plaintiff was damaged, no other parties are required to be joined in this action. As also discussed herein, Plaintiff has stated a claim in each count of the Complaint. He has alleged all required elements of each claim and has provided substantial factual background which, at a minimum, is more than sufficient to make Plaintiff's claims plausible. Additionally, Defendants' request for dismissal on personal jurisdiction grounds must be denied because Plaintiff's personal jurisdiction allegations are legally sufficient and have not been challenged by affidavit. Accordingly, this Court should deny the Motion to Dismiss.

## II. FACTS

Plaintiff, Defendant SMS Co. ("SMS"), a general partnership, and Plaintiff's ex-wife Lucille were the partners of Landmark, a general partnership, at all material times. DE 1 at ¶¶ 3, 19-20. The three individual defendants, who are the children of Plaintiff and Lucille, are the only partners of SMS. DE 1 at ¶¶ 4, 6. In late 2017, Landmark received approximately $2,879,320.25 from a transaction. DE 1 at ¶ 26. At the time Defendants Marsha Stocker and SMS were managing, and in control of, Landmark. *See* DE 1 at ¶ 22.

Defendants concealed from Plaintiff details related to the 2017 transaction including Landmark's receipt of funds from the transaction and Landmark's disbursement of those funds. *See* DE 1 at ¶¶ 27-28, 40-47.  As it turned out, Defendants conspired to, and actually did, divert money to themselves and Lucille from the transaction in such a way that enabled them to receive the benefit of the funds without Plaintiff receiving the benefit of a single dollar.  *See* DE 1 at ¶¶ 29, 31-38, 47-55.  After engaging in the overt act of diverting the funds, Defendants engaged in further efforts to conceal their misconduct from Plaintiff.  *See* DE 1 at ¶¶ 40-47.  Defendants' ultimate goal was to attempt to conceal their diversion of the funds until Lucille received Plaintiff's interest in Landmark via equitable distribution.  *See* DE 1 at ¶ 53.

### III.   THIS IS NOT (AND CANNOT BE) A DERIVATIVE ACTION

As an initial matter, derivative lawsuits do not exist in the context of general partnerships. Derivative actions have become a creature of statute.  While the Florida Revised Limited Liability Company Act (Ch. 605, Fla. Stat.), Florida Business Corporation Act (Ch. 607, Fla. Stat.), and Florida Revised Uniform Limited Partnership Act of 2005 (§§ 620.1101-620.2205, Fla. Stat.) provide for derivative actions, the Revised Uniform Partnership Act (§§ 620.81001-620.9902, Fla. Stat.) does not.[1]  *See* § 605.0802, Fla. Stat. (addressing derivative actions concerning limited liability companies); § 607.01401(17), Fla. Stat. (defining "derivative proceeding" under the Florida Business Corporation Act); § 620.2002, Fla. Stat. (addressing derivative actions concerning limited partnerships); §§ 620.81001-620.9902, Fla. Stat.

Even if some sort of derivative action existed for general partnerships, this case has properly been brought as a direct action.  Defendants recognize that a shareholder or member can

---

[1] The same is true under New York corporation and partnership law.  *See* N.Y. Bus. Corp. Law § 626 ("Shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor")**;** N.Y. P'ship Law § 121-1002 ("Limited partner's derivative action").

bring a direct action in Florida when there is direct harm and a special injury to the shareholder or member. *See* DE 19 at pp. 13-14. Of course, everything alleged in the Complaint reveals that the only harm done here was to Plaintiff and that no other partners of Landmark suffered an injury. In fact, as alleged in the Complaint, "Defendants agreed and conspired to devise a scheme, and actually carried out a scheme, pursuant to which they surreptitiously diverted money from Landmark to SMS to ensure that SMS, Lucille, and the Individual Defendants were able to benefit from the net sales proceeds while preventing Burton from receiving a distribution." DE 1 at ¶ 52.

Regardless, Florida law permits a direct action without showing direct harm and a special injury "when there is a separate duty owed by the defendant(s) to the individual plaintiff under contractual *or statutory mandates*."[2] *Dinuro Invs., LLC v. Camacho*, 141 So. 3d 731, 740 (Fla. 3d DCA 2014) (citation omitted) (emphasis added). Significantly, in a general partnership, a partner owes fiduciary duties of loyalty and care to the other partners. § 620.8404, Fla. Stat. *See also Application of Lester*, 386 N.Y.S.2d 509, 512 (N.Y. Sup. Ct. 1976) (citing *Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928)) ("A partnership is fiduciary in character with each partner owing the others the highest degree of fidelity, loyalty and fairness in their mutual dealings. It has been classically expressed as 'Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.' "). Moreover, in Florida, "[a] partner may maintain an action against the partnership *or another partner* for legal or equitable relief" to enforce the partner's rights under section 620.8404. § 620.8405(2)(b)1, Fla. Stat. (emphasis added).

---

[2] Although the court in *Silver Crown Invs., LLC v. Team Real Estate Mgmt., LLC* stated that the terms of the Florida Revised Limited Liability Company Act "seem to do away with the separate statutory duty exception," 349 F. Supp. 3d 1316, 1326 (S.D. Fla. 2018), even if true, the same is not the case under the Revised Uniform Partnership Act (§§ 620.81001-620.9902, Fla. Stat.). In fact, as discussed further below, section 620.8405 permits partners to bring actions against other partners including actions related to the fiduciary duties owed to partners. *See* § 620.8404, Fla. Stat.; § 620.8405(2)(b)1, Fla. Stat.

IV.  **STANDING**

Defendants argue that Plaintiff's "claims to 'standing' are all based on his purported right to receive a distribution or other funds from Landmark as a minority partner" even though he is no longer a partner. DE 19 at p. 9. But that is not the case. Plaintiff's claims are based on actions taken by Defendants at a time when Plaintiff was undisputedly a partner of Landmark. Plaintiff's claims relate to actions taken by Defendants in late 2017 and early 2018 (including self-dealing and other misconduct) and to their efforts to conceal those actions in the months that followed. *See* DE 1 at ¶¶ 24-55. Under section 620.8404 of the Florida Statutes, various duties were owed to Plaintiff during all times that he was a partner of Landmark.

It goes without saying that all of the conduct alleged in the Complaint pre-dates the filing of this lawsuit and that Plaintiff was damaged as a result of such conduct before the filing of this lawsuit. Of course, the Assignment of Partnership Interest ("Assignment")[3] attached as Exhibit "C" to the Motion to Dismiss is dated July 26, 2019 (this case was filed on June 25, 2019). Though the Assignment contains an effective date of April 2, 2019, that does not change the fact that the Plaintiff is seeking damages based on actions taken by Defendants to harm only Plaintiff at a time when Plaintiff was undisputedly a partner (and at a time that also pre-dates the effective date of the Assignment). This case is not merely about whether Plaintiff should have received

---

[3] Defendants have requested that this Court take judicial notice of the Assignment, a partial final judgment, and a notice of compliance. *See* DE 19 at ¶ 8 & nn. 1, 3. While judicial notice of certain court records may be permissible for limited purposes, it is procedurally inappropriate to take judicial notice of the Assignment at this juncture. The two cases cited by Defendants in footnote 3 of the Motion to dismiss are distinguishable. The first case involved judicial notice of a mortgage assignment, which is generally a matter of public record. *See Mills v. Select Portfolio Servicing, Inc.*, No. 18-cv-61012, 2018 WL 5113001, at *3 n.1 (S.D. Fla. Oct. 19, 2018). The second case involved an assignment agreement that had been filed in a receivership proceeding (it was a matter of public record). *See MSPA Claims 1, LLC v. United Auto. Ins. Co.*, 204 F. Supp. 3d 1342, 1344 n.2 (S.D. Fla. 2016).

distributions—it is about the fact that, among other things, "Defendants agreed and conspired to devise a scheme, and actually carried out a scheme, pursuant to which they surreptitiously diverted money from Landmark to SMS to ensure that SMS, Lucille, and the Individual Defendants were able to benefit from the net sales proceeds while preventing Burton from receiving a distribution." DE 1 at ¶ 52. Notably, nothing in the Assignment assigns any claim for damages based on pre-Assignment conduct. Even if Defendants were to argue that any such claims were assigned by virtue of the Assignment, such a determination cannot properly be made on a motion to dismiss as doing so would require impermissibly drawing inferences in favor of Defendants.

The main case relied upon by Defendants in support of their standing argument is inapposite. *See* DE 19 at p. 10; *Martinez v. Mkt. Traders Inst., Inc.*, 757 F. App'x 815 (11th Cir. 2018). In *Martinez*, the claims were based on harm to the plaintiff's ownership or stock interest in a corporation; as such, whether the plaintiff remained a shareholder of the corporation—she did not—was dispositive. *See* 757 F. App'x at 816. In this case, however, the claims asserted relate to harm done directly to Plaintiff, a general partner of a general partnership. Plaintiff's current partnership status is not relevant to the claims alleged by Plaintiff in this case. Further, dismissal of the lawsuit in *Martinez* was predicated upon collateral estoppel grounds. *See id.* at 816-18. But here, several elements of collateral estoppel cannot be met:[4] the issues are not identical; "there was [not] a full and fair opportunity to litigate the issues in the [divorce] proceeding"; "the issues in the prior litigation were [not] a critical and necessary part of the prior determination"; and "the issues were [not] actually litigated in the [divorce] proceeding."[5] *See id.* at 817 (quoting *Pearce*

---

[4] Defendants have not expressly argued in the Motion to Dismiss that collateral estoppel applies. *See* DE 19 at p. 10. Nevertheless, Plaintiff briefly addresses the issue in an abundance of caution.

[5] The divorce court was tasked with equitably distributing marital assets. The issues concerning Defendants' liability for the misconduct that is the subject of this case were not addressed or resolved by equitable distribution in the divorce case. Regardless, applying collateral estoppel at

6

*v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d DCA 2017)) (setting forth elements of collateral estoppel). After all, as alleged in the Complaint, Defendants concealed information from Plaintiff and were obstructive when Plaintiff attempted to obtain related documentation in connection with trial. *See* DE 1 at ¶¶ 36, 40-47. At a minimum, it is not apparent from the four corners of the Complaint, combined with the exhibits to the Motion to Dismiss (if judicially noticed), that the elements of collateral estoppel can be satisfied.[6]

With respect to the alleged stipulation to transfer his partnership interest, Exhibit "B" to the Motion to Dismiss reflects that same was done under protest. Regardless, as mentioned above, the Assignment did not assign claims that Plaintiff had against Defendants for damages they caused him while he was a partner of Landmark. Thus, Plaintiff has standing to bring the claims asserted in the Complaint.

## V.  LANDMARK AND LUCILLE ARE NOT INDISPENSABLE PARTIES[7]

As discussed above, this is not a derivative lawsuit.[8] Nevertheless, Defendants incorrectly maintain that Landmark and Lucille are still indispensable parties to a direct action—that they

---

this stage is inappropriate as collateral estoppel cannot "be judged on the face of the complaint." *See Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1338 (S.D. Fla. 2014) (citations omitted) ("The affirmative defense of collateral estoppel may be raised in a Rule 12(b)(6) motion to dismiss, 'where the existence of the defense can be judged on the face of the complaint.' ").

[6] Defendants also rely upon the following cases, specifically for the proposition that former shareholders who are no longer shareholders do not have standing to bring a derivative action: *Siegmund v. Xuelian*, No. 12-62539-CIV, 2016 WL 1444582, at *6 (S.D. Fla. Apr. 11, 2016); and *In re Biscayne Bay Lofts, LLC*, No. 10-13020-BKC-AJC, 2010 WL 3282598, at *3 (Bankr. S.D. Fla. Aug. 19, 2010). *See* DE 19 at p. 10. For the reasons discussed in Part III above, however, this is not a derivative action. Thus, *Siegmund* and *Biscayne Bay Lofts* are inapposite.

[7] Plaintiff concedes that the joinder of Landmark or Lucille would destroy diversity jurisdiction.

[8] Plaintiff concedes that a corporation, limited liability company, or limited partnership is an indispensable party to a derivative action brought by a minority shareholder, member, or limited partner. This Court should note that the *Duke & Benedict, Inc. v. Wolstein* case relied on by Defendants does not reference general partnerships (it merely states "that *limited partnerships and*

7

"would still need to be joined to afford complete relief." DE 19 at p. 13. As to Landmark, Defendants do not explain why (or cite any law as to why) they contend Landmark would be an indispensable party to a direct action.[9] As to Lucille, Defendants cite two cases in support of their contention that Lucille, as a partner, would be an indispensable party to a direct action (no further explanation is provided, however). *See* DE 19 at p. 13. First, Defendants cite a case for the proposition that "[g]enerally, members of a partnership are considered indispensable parties to an action *involving partnership business*." DE 19 at p. 13 (quoting *Wing Indus., Inc. v. Korach*, 31 Fed. R. Serv. 2d 582, at *2 (S.D. Fla. 1981)) (emphasis added).[10] But this is not an action involving partnership business; thus, the foregoing general statement does not apply. This is an action against wrongdoers who engaged in misconduct, and then concealed same from Plaintiff—misconduct which was aimed at harming Plaintiff and benefitting Defendants and Lucille. *See* DE 1 at ¶ 52 ("Defendants agreed and conspired to devise a scheme, and actually carried out a scheme, pursuant to which they surreptitiously diverted money from Landmark to SMS to ensure that SMS,

---

*corporations* are indispensable parties to derivative actions"—Plaintiff does not dispute that; the differences are that this is not a derivative lawsuit and Landmark is a general partnership). *See Duke & Benedict*, 826 F. Supp. 1413, 1415 (M.D. Fla. 1993) (emphasis added).

[9] *See Lenz v. Associated Inns & Rests. of Am.*, 833 F. Supp. 362, 379 (S.D.N.Y. 1993) (citing *Whitney v. Citibank, N.A.*, No. 81 Civ. 5832 (CBM), 1985 WL 566, at *5 (S.D.N.Y. Apr. 19, 1985)) ("[I]n a direct individual or representative action brought by a limited partner against general partners, the limited partnership itself may be dropped from the action or disregarded for diversity purposes.").

[10] In *Wing Industries*, in making the foregoing statement about members of a partnership generally being indispensable to actions involving partnership business, the court cited to *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.*, 546 F.2d 1227 (5th Cir. 1977). In *Harrell & Sumner*, the court had stated that "[f]ederal courts have held that in an action brought on a partnership contract, all members of the partnership are indispensable parties." 546 F.2d at 1229 (citations omitted). This case, however, is not a case that has been brought on a partnership contract.

8

Lucille, and the Individual Defendants were able to benefit from the net sales proceeds while preventing Burton from receiving a distribution.").

The second case cited by Defendants (which applies Georgia law) to support their contention that Lucille is an indispensable party is also distinguishable. *See DM II, Ltd. v. Hosp. Corp. of Am.*, 130 F.R.D. 469 (N.D. Ga. 1989). Defendants quote the portion of *DM II* that states "absent partners are indispensable parties." DE 19 at p. 13 (quoting *DM II*, 130 F.R.D. at 475). To add a few words to the quote from the case, the court said "*the* absent partners are indispensable parties *to this action*"—in other words, the court found they were indispensable parties based on the facts of that case. *DM II*, 130 F.R.D. at 475 (emphasis added). That is because, among other things, the court found "there can be no doubt that the absent partners possess claims against defendants identical to those currently asserted by plaintiffs." *Id.* at 472. To the contrary, to the extent Lucille would have any claims, they are certainly not identical to Plaintiff's claims. Again, Defendants' scheme was one intended to benefit Defendants *and Lucille* to the detriment of Plaintiff. *See* DE 1 at ¶¶ 49-53.

Of course, an analysis of the specific language of Rule 19 reveals that Landmark and Lucille are not required parties; alternatively, if this Court were to determine they are, "in equity or good conscience, the action should proceed among the existing parties" under Rule 19(b). Notably, "courts are loathe to grant motions to dismiss" under Rule 12(b)(7), which provides for dismissal for "failure to join a party under Rule 19." *Microsoft Corp. v. Cietdirect.com LLC*, No. 08-60668-CIV, 2008 WL 3162535, at *2, *5 (S.D. Fla. Aug. 5, 2008) (citation omitted). A two-part analysis is applied under Rule 19. *See Santiago v. Honeywell Int'l, Inc.*, 768 F. App'x 1000, 1004 (11th Cir. 2019). First, courts analyze whether a party is a required party under Rule 19(a)(1) or 19(a)(2). *See id.* In a direct action, Defendants argue that Rule 19(a)(1) applies to Landmark

9

and Lucille. *See* DE 19 at p. 13 ("Landmark and Lovey would still need to be joined to afford complete relief."). *See also* Fed. R. Civ. P. 19(a)(1) (providing that one is a required party if "in that person's absence, the court cannot accord complete relief among existing parties"). For the reasons discussed above, the cases Defendants rely upon on this point are inapposite. Given that this is an action against Defendants for something that they did to Plaintiff—where they engaged in misconduct solely aimed at harming Plaintiff while benefitting themselves and Lucille—this Court can "accord complete relief among existing parties."

While this Court should determine that Landmark and Lucille are not required parties under Rule 19(a), if this Court were to conclude otherwise, the second part of the Rule 19 analysis would require a determination under Rule 19(b).[11] *See Santiago*, 768 F. App'x at 1004. Under Rule 19(b), four nonexclusive factors "must be examined in each case to determine whether, in equity and good conscience, the court should proceed without a party whose absence from the litigation is compelled." *Id.* (citation omitted). "These four factors include '(1) how prejudicial a judgment would be to the nonjoined and joined parties, (2) whether the prejudice could be lessened depending on the relief fashioned, (3) whether the judgment without joinder would be adequate, and (4) whether the plaintiff would have any alternative remedies were the case dismissed for nonjoinder.' " *Id.* at 1004-05 (citation omitted). Nevertheless, "findings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation." *Id.* at 1005 (citation omitted).

---

[11] Rule 19(a) sets forth when joinder is required "if feasible." Joinder is not feasible if it "would divest the court of jurisdiction." *Dean Ritter Reynolds Inc. v. Pollack*, No. 96-6397-CIV-DAVIS, 1996 WL 1044969, at *2 (S.D. Fla. May 29, 1996). Therefore, if this Court determines that Landmark or Lucille is a required party, this Court would need to turn to Rule 19(b).

The first factor (prejudice of a judgment) examines whether "any party [would] be exposed to a fresh action by the absentee [party], and if so, how serious is the threat?" *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1344 (11th Cir. 2011) (quoting Fed. R. Civ. P. 19 advisory committee notes). As a practical matter, Defendants are not going to be exposed to a threat by Landmark or Lucille. Defendants own a majority interest in, and control, Landmark. As to Lucille, Defendants' interests are aligned with Lucille. Even if Lucille could sue Defendants for any of the claims alleged in the Complaint (which is doubtful given that she benefitted from Defendants' misconduct, which was aimed at harming nobody other than Plaintiff), the likelihood of Lucille (the mother of the individual defendants who benefitted from their misconduct) bringing an action against her children appears to be non-existent as a practical matter. Accordingly, the first factor weighs heavily against dismissal.

The second and third factors also weigh against dismissal as Plaintiff is seeking money damages. *See id.* at 1344-45 (citations omitted) ("Considerations (2) and (3) also weigh against dismissal. These provisions come into play when—unlike this case—litigants seek specific relief such as an injunction. In that context, if a party ultimately responsible for the plaintiff's woes is not present, the court cannot direct that party to change its behavior. Money damages lack these concerns. Money is fungible; the recipient cares not from whence it came.").

As indicated above, the fourth factor examines "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). Notably, Defendants, who also contest personal jurisdiction, would seek to have Plaintiff (a Florida resident in his 90s) file this lawsuit in state court in New York against not only Defendants, but also against their mother, Lucille (also a Florida resident in her 90s). Even if same could be done, as a practical matter, doing so would impose additional unnecessary hardships.

Given that at least three (and potentially all four) of the factors under Rule 19(b) weigh against dismissal, and given that other pragmatic considerations weigh against dismissal, if this Court finds Landmark or Lucille to be a required party under Rule 19(a), this Court should determine that "in equity and good conscience, [this] action should proceed among the existing parties" pursuant to Rule 19(b).

## VI.   PLAINTIFF STATED A CLAIM IN EACH COUNT OF THE COMPLAINT

### A. Breach of Fiduciary Duty (Count I)

Contrary to Defendants' contention in the Motion to Dismiss, Plaintiff has stated a claim for breach of fiduciary duty. *See* DE 1 at ¶¶ 58-65. With respect to the first element (duty), Plaintiff has alleged that a duty was owed to Plaintiff as a partner of Landmark. *See* DE 1 at ¶¶ 58-62. As discussed above, such a duty was owed as a matter of law. *See supra* Part III; § 620.8404, Fla. Stat.[12] Turning to the second and third elements (breach and damages), Plaintiff has alleged both elements. *See* DE 1 at ¶¶ 63, 65. Defendants cite no case law to support their contention that Plaintiff's allegations are insufficient. Moreover, the limited arguments Defendants make regarding Plaintiff's allegations of breach and damages would require drawing inferences in favor of Defendants. Of course, on a motion to dismiss, all reasonable inferences must be drawn in favor of Plaintiff. *S. Spanish Trail*, 2019 WL 3285533, at *1.

### B. Civil Conspiracy (Count II)

Defendants seek dismissal of Count II for two separate reasons, both of which should be rejected. First, they contend that Plaintiff failed to allege "some personal stake in the conspiracy

---

[12] While this Court should find Plaintiff's allegations regarding the existence of a duty to be sufficient, to the extent this Court finds otherwise, Plaintiff respectfully requests leave to amend. In such event, Plaintiff would include allegations regarding the existence of a statutory duty and regarding the existence of a relationship of trust and confidence given Defendants' roles in managing Landmark.

12

by the individuals." DE 19 at p. 17. Defendants are incorrect; Plaintiff alleged that "[e]ach of the Defendants had a personal stake in the activities of the conspiracy." DE 1 at ¶ 71. Moreover, Plaintiff included certain allegations in the general allegations of the Complaint related to the personal stake of Defendants. *See* DE 1 at ¶ 38 ("The Transfers were sham transactions orchestrated in a manner to allow Defendants to benefit to the detriment of Burton."); DE 1 at ¶ 48 ("Defendants did so because they wanted to have the benefit of the funds without Burton being able to also benefit from the funds. Defendants wanted to benefit at Burton's expense."). *See also* DE 1 at ¶¶ 50-55. Second, Defendants contend that Count II of the Complaint should be dismissed because Plaintiff failed to state a claim for breach of fiduciary duty (the underlying wrong) in Count I. *See* DE 19 at p. 18. As discussed above, however, Plaintiff has stated a claim for breach of fiduciary duty.[13] Accordingly, Defendants' request for dismissal of Count II should be denied.

## C. Fraudulent Conveyance (Counts III and IV)

Defendants seek dismissal of Counts III and IV for two separate reasons, both of which should be rejected. First, they contend that Plaintiff does not allege he is a creditor. *See* DE 19 at p. 18. Contrary to Defendants' contention, however, Plaintiff expressly alleged that he is a creditor in both Counts III and IV of the Complaint. *See* DE 1 at ¶¶ 75, 84. Of course, both Florida and New York fraudulent transfer law broadly define the term "creditor." Under Florida law, " '[c]reditor' means a person who has a claim." § 726.102(5), Fla. Stat. " 'Claim' means a right to

---

[13] Defendants note that civil conspiracy requires an underlying wrong. *See* DE 19 at p. 18. While that is generally true, it is possible to state a claim for civil conspiracy even if no underlying wrong is alleged. *See Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977) ("[I]f the plaintiff can show some peculiar power of coercion possessed by the conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent tort."). *But see Meyer v. Suitable Movers, LLC*, No. 19-60816-CIV-ALTMAN/Hunt, 2019 WL 3457614, at *3 (S.D. Fla. July 31, 2019) (citation omitted) ("Florida does not recognize civil conspiracy as a freestanding tort.").

payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Under New York law, " '[c]reditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.Y. Debt. & Cred. Law § 270. In light of these broad definitions, and as all factual allegations must be construed in the light most favorable to Plaintiff, it is, at the very least, plausible that Plaintiff is a creditor of Landmark based on the allegations of the Complaint.

Second, Defendants contend that Plaintiff "must also plead his allegations with particularity." DE 19 at p. 18. As an initial matter, courts differ as to whether fraudulent conveyance claims must be pled with particularity. Although Defendants cite one decision that found Rule 9(b) applies to fraudulent transfer claims, other judges in this district and other courts have found to the contrary. *See Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, No. 07-80633-CIV, 2008 WL 660100, at *6 (S.D. Fla. Mar. 7, 2008) (citation omitted) ("The Court concludes that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the FUFTA."); *United Funding, Inc. v. Boschert*, No. 6:09-cv-1839-Orl-28GJK, 2010 WL 11626531, at *1 (M.D. Fla. Mar. 9, 2010) (citations omitted) ("Plaintiffs . . . correctly argue that the [heightened pleading] standard does not apply to allegations of violations of FUFTA."); *United Funding*, 2010 WL 11626531, at *2 (citations omitted) ("This Court agrees with other courts that have determined that 9(b) does not apply to actions brought under FUFTA and similar state statutes establishing causes of action for fraudulent transfer.").[14]

---

[14] Candidly, even though not raised by Defendants in the Motion to Dismiss, New York federal courts apply Rule 9(b) to certain allegations related to actual fraudulent transfers. *See In re Tronox Inc.*, 429 B.R. 73, 92 (Bankr. S.D.N.Y. 2010) (citation omitted) (noting that pleading such claims requires specifying what property was transferred, alleging timing and frequency of transfers, and

Nevertheless, this Court does not even need to reach the issue of whether fraudulent transfer claims are subject to Rule 9(b) because the detail alleged in the Complaint is sufficient to satisfy both Rule 8 and Rule 9(b).[15]  Plaintiff has alleged transfer amounts (*see* DE 1 at ¶¶ 32, 34, 76-82, 85-91) and transfer dates (*see* DE 1 at ¶¶ 32, 34, 76, 85).  He has identified the existence of various specific badges of fraud in both Counts III and IV (*see* DE 1 at ¶¶ 79-83, 88-92).  And he has alleged various other circumstances related to the timing and concealment of the transfers (*see* DE 1 at ¶¶ 26-54).  Thus, even if Rule 9(b) applies to Counts III and IV of the Complaint, Plaintiff has satisfied the pleading standard thereunder.

For the foregoing reasons, Plaintiff has stated a fraudulent conveyance claim in both Counts III and IV of the Complaint.

## VII.     **PERSONAL JURISDICTION**

Because Plaintiff alleged that "Defendants are engaged in substantial and not isolated activity within the State of Florida," DE 1 at ¶ 12, Plaintiff satisfied his initial burden of alleging that this Court has personal jurisdiction over Defendants.  As such, to attempt to challenge the existence of general jurisdiction, Defendants were required to do so by affidavit.  Defendants, however, have not filed any such affidavits.  Accordingly, this Court should deny Defendants' request for dismissal pursuant to Rule 12(b)(2).  *See Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1181 (S.D. Fla. 2012) ("Florida's long arm statute confers personal jurisdiction for several of enumerated reasons. Plaintiff's Amended Complaint alleges that Defendants carried on a business or business venture in Florida; committed tortious acts within the

---

alleging what consideration was paid).  As discussed herein, the allegations of the Complaint identify the transfers, the timing of the transfers, and several other facts and circumstances.

[15] Notably, while Defendants assert that fraudulent transfer claims must be pled with particularity, they fail to explain why they do not believe Plaintiff pled his allegations with particularity.

15

state; caused injury to persons or property within the state by products used in commerce; and engaged in substantial and not isolated activity within the state. These allegations, accepted as true, satisfy Subsections 48.193(1)(a), (1)(b), (1)(f)(2), and (2)."); *Canale v. Rubin*, 20 So. 3d 463, 466 (Fla. 2d DCA 2009) (citations omitted) ("The complaint tracked the language of the statute and alleged: 'Defendants Canale and Jacana are subject to personal jurisdiction in Florida for having engaged in substantial and not isolated activity within the State pursuant to F.S. 48.193(2).' This bare assertion was sufficient to meet the plaintiffs' initial burden of pleading jurisdiction. The burden then shifted to the defendants to submit a legally sufficient affidavit or other sworn proof to contest the plaintiffs' jurisdictional allegation."); *Zero's Mr. Submarine, Inc. v. Zero's Subs of Fla., Inc.*, 914 So. 2d 1105, 1106 (Fla. 4th DCA 2005) (citing *Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla.1989)) ("Appellants' challenge is to the sufficiency of Appellee's allegations. Appellee correctly argues that a plaintiff may obtain jurisdiction over a non-resident defendant by pleading the language of the statute without including the supporting facts."); *Walt Disney Co. v. Nelson*, 677 So. 2d 400, 402 (Fla. 5th DCA 1996) (citations omitted) ("The burden of demonstrating the applicability of § 48.193 may initially be met by pleading facts within a jurisdictional basis contained in the statute. If the plaintiff has pled a prima facie case for jurisdiction, a simple motion to dismiss for lack of jurisdiction must fail, as a motion to dismiss, without more, challenges only the facial sufficiency of the jurisdictional pleading."). It is beyond peradventure that Plaintiff has satisfied the requisite pleading requirement.[16]

---

[16] If this Court grants Defendants' request for dismissal under Rule 12(b)(2) for any reason, Plaintiff respectfully requests leave to amend to include additional allegations supporting general jurisdiction and to allege that specific jurisdiction exists under § 48.193(1)(a)2 and/or § 48.193(1)(a)6a of the Florida Statutes.

## VIII. CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety. In the event this Court grants the Motion to Dismiss or any part thereof, however, Plaintiff respectfully requests that this Court grant Plaintiff leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Dated: September 13, 2019

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 13th day of September 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will serve a copy of the foregoing upon all registered counsel of record.

>
> The DuBosar Law Group, P.A.
> 3010 North Military Trail, Suite 210
> Boca Raton, Florida 33431
> Phone: (561) 544-8980; Fax: (561) 544-8988
>
> By:     */s/ Eli DuBosar*
> Howard D. DuBosar; Fla. Bar No. 729108
> HDuBosar@dubolaw.com
> KDoyle@dubolaw.com
> Eli DuBosar; Fla. Bar. No. 106338
> EDuBosar@dubolaw.com
> TNovak@dubolaw.com